Thank you very much. Mr. Neidert, members of the Court, my name is John Lambrose. I'm here on behalf of the Petitioner Appellant, Mr. Ronald Riner. This habeas case comes before the Court in the form of a somewhat unusual two-part certificate of appealability. The first part is whether or not the ineffective assistance of counsel claim, which I'll just in a sort of shorthand reference refer to as the is exhausted, and then if so, the Court would reach the second part of the certificate of appealability, and that is whether or not the claim has merit. In other words, whether or not Mr. Riner's lawyer was ineffective for not having taken the necessary steps through investigation and other means to ensure that Mr. Riner entered a guilty plea that was knowing and voluntary and that he was competent at the time, that the L-level, the 150 milligrams of L-level per day since he was incarcerated, which added up to about four months' worth of drug, of intake of that drug, affected his ability to enter a knowing and voluntary plea. So as to the first part, the exhaustion issue, it's in our position both the first time around, and Riner won, on remand to back down to the district court and in our briefing in this case, that several factors have to lead to the conclusion that Mr. Riner exhausted this claim in State court. The first one is when he litigated this in proper person, which I'll refer to as post-conviction one, he was entitled to the benefit of the doubt that this Court has given, this Court and the United States Supreme Court has given pro se Petitioners. And the case I'm referring to is the case that we referenced in our brief, the Sanders v. Ryder case. And that although, admittedly, Mr. Riner's pleading was not all that artful, it was certainly enough to put the Nevada courts on notice that he was alleging the ineffective assistance of counsel claim. Counsel, can I interrupt here? What do we do with the fact that the claim was dismissed as not timely? They dismissed the petition as untimely. What does that do to the whole argument? That was the default issue is an issue that we briefed in our briefing in this particular appeal. And our position on that, Judge Fletcher, was that the default is not adequate. And the default specifically was the Nevada Supreme Court did not accept jurisdiction of the appeal from post-conviction one based on the Nevada's 30-day rule, our 30-day to file a notice of appeal rule. Our position is that Mr. Riner never violated that rule. And our briefing on that point is at pages 29 through 33 of the opening brief. But in short ---- But, however, Mr. Lambros, aren't we really arguing about something that the Nevada court looked at under Nevada law? And, therefore, how do we undo that State court interpreting its own laws? Well ---- I mean, as to the first petition, they're the ones who said it was untimely. They're the ones who suggested they were interpreting their own laws to suggest that it was untimely. And now you're asking me to undo that, which is a procedural bar, really. This Court has ---- a Federal court has the ability and must exercise that ability to examine whether or not the default is adequate and independent. And that's been true ever since Coleman v. Thompson. And that kind of gets back to the answer that I was going to give Judge Fletcher, and I think it answers your question also, Judge Smith, and that is it was not adequate because the rule was never broken. Mr. Riner never violated the rule. Mr. Riner's first State postconviction petition never became final. It never ---- it's not final to this day because under Nevada law, the State court was obliged to file what's called a notice of entry of order. And I've cited the court to the Klein v. Warden case, 34 Pacific 3rd, 1029. And, again, Judge Fletcher, I think this answers your question, that because no notice of entry of order was ever filed, there was no finality. So Nevada's 30-day rule, 30 days to file a notice of appeal rule, never went into effect. But, again, getting to Judge Smith's question, why does it matter to us if Nevada says that's it, it's final? Well, because under Federal law ---- I mean, we can't redo what happened there. We can't declare that the Nevada Supreme Court essentially misinterpreted what we can say. I think maybe this gets to your argument, is the rule, the default. In other words, we have to accept the procedural bar. The question is, for Federal purposes, is it consistently applied and is it adequate? Right. Now, are you arguing consistent application here? Yeah. Or are you just relying on adequacy of this particular bar? Well, consistent application comes within the umbrage of adequacy. Right. I'm not arguing independence. I'm not arguing that they had to decide an antecedent Federal question first. What I'm saying is that it's clearly a consistent application rule. They didn't follow their rule. And because they didn't follow their rule, the default is entitled to no Federal deference. So if the default is entitled to no Federal deference, it gets us back to where are we now. And where we are now is we have a fully and fairly exhausted Federal claim that no Nevada court has adequately and competently reviewed. I mean, really, what happened in the State district court, at the trial level court, cannot be considered under Federal law or, for that matter, State law an adequate review. Judge Adams, the trial judge, within five days of the filing of the pro se petition in Postconviction 1, files a summary decision without any findings of fact, conclusions of law, or anything else, which, again, is a violation of Nevada law. So what Mr. Reiner did is he pointed all that out to no avail. I mean, at the end of the day, what you have is a State default that's not entitled to any Federal deference because it's just the Nevada courts didn't follow their own rules. And it's clearly set forth in Klein. Would you mind turning to the merits for a minute? Sure. I mean, it seems to be at the end of the day, let's assume your client gets all the relief you're seeking, then you're back to whether or not he's going to plead guilty or not in a case, right? Right. But show me whether there's any prejudice in this. Well, the prejudice is when he pled guilty, he got the maximum sentence under Nevada law. He could not get more than 40 years. Right. So, you know, I mean the sentence. But that's a sentencing issue. It's not necessarily a guilt fee. Well, no, but what I inferred. You're just going to try. I mean, it seems to me at the end of the day, all you're trying to do is get a sentence reduced. There's really not. Unless you can persuade me. Otherwise, I don't see there's much merit in the question of his guilt, is there? Well, that's not what the issue before this Court. No, but I'm trying to play this out a little bit and see where you're headed with this. Have you ever seen a case where this kind of ineffective assistance claim has worked to negate a guilty plea? Well, in the cases that I cited, the Douglas, I don't know. I can't remember. I'm talking about the specific drug. Do you? On Elevel? Yes. I do not know a specific case where that has occurred. But really what motivates Mr. Reiner and me on his behalf today is to get that plea set aside so he can go back to square one. And perhaps, you know, if not have another trial or have a trial, a better plea. A better plea deal. Keep in mind or, you know, at least the opportunity to make a better presentation at sentencing, because keep in mind what the negotiation that the parties agreed to was a 20-year sentence, 20 years concurrent to 20 years, and the trial judge gave him 40 years. And, you know, Mr. Reiner complained continually about that. And all of his post-PCR, post-conviction 1 litigation set that out. And the only reason he withdrew post-conviction 1 to go forward with post-conviction 2 was because after he read the State's answer, he thought that that was his only remedy. So really, you know, Judge Thomas, I understand your question. And I don't, you know, and I certainly anticipated it. And I don't mean to be cute by answering that, you know, his guilt is not the issue before this Court, but really it's not. The issue before this Court is whether or not he – whether or not this Court can be satisfied that his plea was a product of, you know, every constitutional right being afforded. And the one that we're talking about now is his right to, under the Sixth Amendment, to the effective assistance of counsel prior to the entry of a guilty plea. You've got about 20 seconds left, but we'll get going. Yeah, I'd like to reserve it. I forgot to ask for that. I'm sorry. No, that's fine. If it pleases the Court, counsel, my name is David Neidert. I'm a senior deputy attorney general representing the Respondents in this case. According to the – what – I'd like to go to the merits part, because the problem with the merits part in this case, it has never been determined by the district court. This Court, the Certificate of Appealability says, is this claim exhaustive? And if it is, discuss the merits. The problem is that the merits have never been discussed at the district court level. Well, we understand that, yeah. I mean, that's one of the options if we were to get that far as to remand to the district court. But I think if you – even if you look at the merits beyond that, what this claim of ineffective assistance of counsel actually is, it's a subset of I didn't enter a knowing and voluntary plea because my counsel is ineffective because he didn't do that. And in a voluntary plea case, you look at the record before the court and see what happened and see whether the plea was, in fact, knowing and voluntarily entered. And in this case, if you look at the plea colloquy, which is found in a different record, pages 146 to 156, there's a fairly extensive plea colloquy. Mr. Reiner is placed under oath. The judge says, raise your right hand. Where do you tell the truth? And then the court doesn't do a perfunctory canvas. And I've seen some canvases that were fairly short and fairly cursory. Instead, the judge went through a variety of different things and asked Mr. Reiner a variety of questions. Do you understand what the maximum penalty is? He didn't say, do you understand the maximum penalty is 20 years? He said, do you understand what the maximum penalty is? Yes, I do, Your Honor. What is it? And then Mr. Reiner appropriately responded, 20 years. And so by looking at that entire plea colloquy, what you really see is that Mr. Reiner knowingly and voluntarily and intelligently entered his plea.  Counsel, he didn't think it was going to be 40. Is that accurate? He was warned that it could be. He was actually warned. The judge said, do you understand? And I could find the exit. I left the page on my table. But the judge asked without sentencing. And the judge asked, do you understand that they could be consecutive? And the maximum penalty you could get was 40 years. And he said he understood. So he said that. And having said that, he knew what the risk was. Is there any evidence in this record, Counsel, that he was under the influence of Eleville except the allegations? I'm not aware of any in the record. Is there any evidence in the record that his attorney knew or should have known that he was under the influence? I'm not aware of any of that in the record either, Your Honor. I mean, you know, there's not a rule that I'm aware of that Counsel has to say, by the way, are they giving you drugs at the jail? I think that Counsel sort of talks to their client and assesses, does this client, is this client acting loopy? Is this client acting like he's not all here? If he is, maybe I'd better do some investigation. But there doesn't appear to be any of that in this record. And as I said, if you look at the plea colloquy, which is found in the exhibit record, you don't see it. You see, in fact, that Mr. Reiner gave lucid answers to each of the questions that the judge answered. There's not a single question you can look at, not one where the answer is anywhere close to being inappropriate. The closest you have is he's asked what the fine is, and the prosecutor jumps in and says the fine is $5,000. And then he says, well, yes, I understand that's the fine. But there's nothing where he's asked a question where the answer is going to cause anybody's to go up and say, wait a second, there's something a little bit wrong with this defendant, and maybe we need to inquire further. May I change topics just a bit? I'm not quite sure I understand what the district court did on remand here. We sent it down for reconsideration in light of Ryan's and asked the court to take a look at that, and Ryan's, of course, and pulled the state procedure. So what the district court did was address the motion, which was raised by the defense, saying, no, this issue is really exhaustive. He said, no, I'm sticking with my prior ruling. It's not exhaustive. And I'm not going to address the question that the circuit sent down. I don't understand that. Well, I can't speak for Judge Reed ever, Your Honor. But I do think that Judge Reed also pointed out that the option that he gave Mr. Reiner was the Nevada option at the time about if you have a mixed petition, we're going to sort it out and we're going to close the case and stay it administratively and then they can come back. And I don't have the sign-up, but I know it's in his order. He points out that that actually is a better remedy for defendants. What he says is it's a functional equivalent or might be better. But we said consider a stay. And his first order says, and it's almost if I may have it here, I'm not going to consider a stay. That's one thing I won't do. That's what he says in his first order. So we asked him to consider the stay. And he said, well, I'm not going to do it again because what I gave him was a functional equivalent stay, which it wasn't because it didn't operate as a stay. It said you'd come back and reopen the case. So I just find it hard to understand how the district court complied with our order in the first case. And having sat on the first panel, I have a certain proprietary interest in that. I understand that. And I recognize that. You're in that unique perspective of the three judges on the current panel. The way I look at it, and this did not become my case until it was being prepared for the law. No, I'm not blaming you about it. I'm just saying. But it looks like what Judge Reed basically did is he got the remand order back, and then Mr. Lambrow said, well, we'd like you to reconsider whether it's exhausted as opposed to what the remand order said. And the judge said, okay, reconsidered it. And I still find that it's not exhausted. And then he explained why he thinks that the Vada's old method was even better than Ryan's, and it's the order that he did. Right. So he says, no, I'm not going to reconsider it. And so where does that leave us now? I mean, we could send it back down and say, no, we really want you to look at the stay. And then he would have a chance to exhaust it if Mr. Lambrow wanted to take it. Well, certainly one remedy this Court had, and we did not ask for it in our briefs because I did not write the brief, is certainly this Court and the district court has the right to deny an unexhausted claim on the merits. And so we look at the merits of this claim, and I submit that it's a meritless claim. This Court can say, okay, Judge Reed didn't do what we told him to do, but we also look at the underlying claim. We find this claim to be without merit. Because it's an unexhausted claim, we dismiss it on that basis. Well, there is that. But on the other hand, I think Mr. Lambrow's would rightly say, look, I haven't had a chance to develop the record on this. I just have the pleadings. I want to put in some evidence. And the record's inadequate. That's my guess is what he would say on that, for us to consider that in the first instance. And if you notice what Mr. Whelan, who wrote the brief, asked for the case to be remanded back, he didn't ask for this Court to do anything more than that. I'm just suggesting that one thing this Court could do is say we've looked at it because it's based on the face. This claims without merit. Yeah. As we look at the first petition, if you will, it seems to me that your argument is that nowhere in the first petition did Reiner say anything about the theory he now suggests. Isn't that what you're suggesting? Well, with respect to whether exhaustion occurred in that, that's part of it. The other part of it, of course, is that he filed an untimely notice of appeal with the Nevada Supreme Court. And by doing that, the Nevada Supreme Court was never properly before the Nevada Supreme Court for consideration. And then the back of it, well, then he raised it in his second. The problem with that, and Mr. Lambroth sort of alluded to it, is that the second petition was procedurally defaulted. And interestingly, Mr. Lambroth is arguing that that's not an adequate procedural bar, but in fact, two claims have been dismissed from this petition on procedural default grounds because they were contained in that very same petition. And so we're in the position where Judge Reed has ruled essentially that the procedural bar is adequate with respect to the second petition. No COA was granted with respect to that, with those two issues. But Mr. Lambroth is saying, but no, even though there's not a COA with respect to these two dead issues, the procedural bar is still inadequate. You know, usually when we get a procedural bar case and the question is whether or not the bar is consistently applied, we see briefs that cite a whole lot of cases that describe and try to show that the bar has been consistently applied. That's not in this record, though. You'd have to agree with that. I would have to agree with that. I think in this case what it is is that the Nevada Supreme Court ruled that an untimely notice appeal failed to vest jurisdiction. And what Mr. Lambroth's argument is, well, they didn't do the – there was not a notice of entry of order filed. But I think – I would argue that the Nevada Supreme Court in ruling they lacked jurisdiction because it was untimely actually made a finding of some sort with respect to that, and this Court has to give that consideration. Kennedy. At least on that per review, is that what you're saying? At least on that per review, yes, Your Honor. And I'm out of time, but I would certainly ask this Court to rule as it deems appropriate. Thank you, counsel. Thank you. I just have a couple of points. I want to answer Judge Smith's question about evidence in the record regarding the eligible. At the sentencing hearing at pages 190 and 191, which was only about a month and a half after the guilty plea, his lawyer talked about the fact that he was under the influence of antidepressants as part of his mitigation argument. The pre-sentence report, which was written – the interview occurred about two weeks after his guilty plea. He told the – and that's at pages – that's at page 443 of the excerpts. He told the probation officer that he was under the influence of antidepressants and had been since the date of his incarceration, February of 92, I believe, so four months prior to his guilty plea. What happened on remand is – it went back – Judge Thomas, you remember this, obviously, you were on the panel for review under Rhines. That never occurred because we reasserted the fact that this claim was exhausted. You know, we thought we had a little horsepower there because if you look at that remand order, it also talks about additional briefing on the IAC claim. Right. So we thought, you know, we might – we might have had a little wedge on that. We asked to come back to the same panel. No disrespect to this panel, but that was turned down. Yeah. With regard to what Judge Smith had to say concerning the procedural default, I'd just like the Court to take a look at our briefing at pages 29 to 33. Judge Thomas, the only case that matters in this case – there weren't a lot of consistent application in Nevada cases that were cited because the only case that matters is Klein. And I didn't hear Mr. Neidert say anything about Klein. The Nevada Supreme Court clearly held if you don't file a notice of entry of order – and I know it's a technical argument, but for once I get to make one – if you don't is not final. It's still not final. Thank you. Thank you both for your arguments. Interesting case.     Thank you. Thank you. Thank you. Thank you.
judges: Fletcher B. , Thomas, Smith M.